[Cite as *State v. Barnett*, 2012-Ohio-3748.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HARDIN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                 CASE NO. 6-12-03

    v.

CHRISTOFER EUGENE BARNETT,        O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Hardin County Common Pleas Court
Trial Court No. 20102270 CRI

**Judgment Affirmed**

Date of Decision:    August 20, 2012

APPEARANCES:

    *Andrew R. Bucher* for Appellant

    *Bradford W. Bailey and Destiny R. Hudson* for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, Christofer Eugene Barnett, appeals the Hardin County Court of Common Pleas judgment entry of conviction and sentence. For the reasons that follow, we affirm.

{¶2} On March 3, 2011, the Hardin County Grand Jury indicted Barnett on: Count One of importuning in violation of R.C. 2907.07(C)(1), a third degree felony; Count Two of attempted importuning in violation of R.C. 2923.02(A) and 2907.07(C)(1), a fourth degree felony; Count Three of importuning in violation of R.C. 2907.07(C)(2), a third degree felony; Count Four of attempted importuning in violation of R.C. 2923.02(A) and 2907.07(C)(2), a fourth degree felony; and Count Five of possession of criminal tools in violation of R.C. 2923.24(A), a fifth degree felony. (Doc. No. 2).

{¶3} On March 22, 2011, Barnett was arraigned on the indictment and entered pleas of not guilty. (Doc. No. 6); (Mar. 22, 2011 Tr. at 3).

{¶4} On July 22, 2011, the State filed a motion to dismiss Counts One and Two of the indictment, which the trial court granted that same day. (Doc. Nos. 19-20).

{¶5} On November 14, 2011, the matter proceeded to a bench trial. The State presented the testimony of three witnesses at trial. Georgina Marie Osborn testified that her daughter was born in February 2001 and was nine years old in

November 2010. (Nov. 14, 2011 Tr. at 11-12). Osborn testified that, in February 2010, her daughter was given her first cell phone for her ninth birthday, and a subsequent prepaid cell phone in September 2010, which Osborn identified as State's Ex. 1. (*Id*. at 12-15). Osborn testified that, around October 30, 2010, she was looking through the phone numbers in her daughter's cell phone and found a phone number that she did not recognize. (*Id*. at 17). Osborn opened and read about four text messages sent to her daughter's cell phone from the unknown phone number. (*Id*. at 17-22). Osborn testified that her daughter indicated that she did not know who the person was who was texting her. (*Id*. at 20). The text messages consisted of "hi, who is this, and I think an age," according to Osborn. (*Id*. at 22). Osborn's daughter, who was nine, sent a return text message indicating that she was "twenty of [sic] twenty two." (*Id*.). Osborn testified that she took the cell phone away from her daughter, and she sent a message stating her daughter was nine years old, and the unknown sender should not be messaging her daughter. (*Id*.). Osborn testified that she did not receive any response from this text message, but a couple days later she received a text message indicating that the unknown sender was at work and wanted to say "hi." (*Id*. at 24). Osborn testified that, over the next five days, she began responding to the text messages she was receiving on her daughter's cell phone, and she "started getting messages that * * * [her] nine year old daughter should not be getting on her phone." (*Id*. at

27). During part of the texting conversation, the unknown sender indicated that they should not be "having this conversation" because of the age of Osborn's daughter. (*Id.*). Osborn testified that she took the phone to the Kenton Police Department on November 6th or 7th of 2010, and she gave Detective Beach permission to use her daughter's cell phone. (*Id.* at 27-29). Osborn testified that the text messages she received on her daughter's cell phone were still on the cell phone which was admitted into evidence. (*Id.* at 28-29). On cross-examination, Osborn testified that her daughter was the person who initiated the texting. (*Id.* at 30-31).

{¶6} Kenton Police Department Lieutenant Rob Lutes testified that, on December 7, 2010, Osborne reported that, from November 30, 2010 to December 7, 2010, sexual text messages were sent to her daughter on her cell phone. (*Id.* at 32-37). Lutes testified that he turned the case over to Detective Beach. (*Id.* at 38).

{¶7} Kenton Police Department Detective Brian C. Beach testified that Lieutenant Lutes gave him a case involving sexual text messages being sent to a nine-year-old girl's cell phone. (*Id.* at 42-44). Beach testified that he took custody of the minor's cell phone, which he identified as State's exhibit 1, and obtained Osborn's permission to use the child's cell phone. (*Id.* at 45, 48). Beach testified that, after glancing over the past few text messages sent to the cell phone, he started texting the unknown person to initiate a conversation. (*Id.*). Beach

testified that during the text messaging between the unknown person and himself, the unknown person sent a picture of himself, which Beach identified as Chris Barnett. (*Id*. at 47-48). Beach testified that he saved the text messages he received and sent on the cell phone, and had prosecutors submit a subpoena to Verizon Wireless to preserve the text messages. (*Id*. at 51, 72). Beach also testified that he photographed each of the text messages and burned the images onto CDs he identified as State's Exhibits 4A, B, C, D, and E. (*Id*. at 52). Beach testified that he printed out the images of the text messages and compiled them into a document identified as State's exhibit 2. (*Id*. at 55-56). Beach testified that the text messages began on December 7, 2010 at 3:12 p.m. and ended December 8, 2010 at 1:50 p.m. (*Id*. at 57). Beach testified that the text messages were received from phone number 567-674-2896, later identified as Barnett's cell phone number. (*Id*. at 58). Beach testified about nature of the text messages Barnett sent as follows:

> He knows I was nine, I told him. He knew that I was nine because he texted me back that he wasn't sure whether he wanted to have sex with me because I was nine. He then goes into explaining how I can pleasure myself. * * * He tells me that I have to get naked, I can use my finger, put it in my vagina, pull it in and out, and it should feel good. We continue on, he says a penis is always bigger, was bigger

than my finger, so it would hurt. Then he goes on to explain that girls like to have their vagina licked, and guys like to have their penis sucked on. He then explains that it's like sucking on a sucker. This goes on. During the night on the 7th, roughly around midnight while he's still at work, I tell him hey I gotta go to bed. Goes to bed and then the next day roughly around noon, one o'clock, starting texting him again because he's telling me he's gonna be doing his laundry. Start talking. He said he thought about it that night, decided he could not have sex with me because I was too young, and I needed to find somebody my own age. (*Id*. at 63-64).

Beach further testified that, in one particular text, Barnett indicated that he would "like to lick my vagina, that I like sex, that he needs to have sex * * *." (*Id*. at 68).

{¶8} Beach testified that, on December 8th, Barnett text messaged that "he wasn't gonna meet up with me because he knew it was wrong, he knew I was nine, and he knew he could get in trouble for texting then and talking to me." (*Id*. at 59). Beach testified that, after receiving this text message, he obtained a search warrant for Barnett's arrest. (*Id*. at 70). Beach testified that the cell phone seized from Barnett during his arrest matched the phone number from the person sending the sexual text messages. (*Id*. at 71). Beach identified State's exhibits five and six as the Verizon Wireless records showing the text messages sent and received from

Barnett's cell phone on December 7-8, 2010. (*Id.* at 74-75). On cross-examination, Beach testified that he initiated contact with the other person after Osborn turned over her daughter's cell phone. (*Id.* at 80). Beach testified that he initiated a second sequence of text messages about two hours later. (*Id.* at 81). When asked "so, in essence, he told you how to please yourself, but he never told you how he would please you?", Beach answered "[w]ithout going through each and every text messages, and, and, yes." (*Id.* at 83). When asked whether he solicited the other person to have sex, Beach responded:

> I was, no, I did not ask him to have sex. He, he, when I was given the case I was told that he had already solicited the nine year old, that's how it got brought to the mother's attention. Once I get the phone, I tried to reiterate to see what all he would tell me again. (*Id.* at 85).

Beach testified that, based upon what he was told, he thought the nine-year-old child had been texting with the other person up until the day the mother brought the cell phone to the police station, December 7th. (*Id.* at 86-87). Beach testified that State's exhibit two included a picture that he incorporated into a text message, which was not a photograph of the person doing the texting. (*Id.* at 88). On re-direct, Beach testified that he thought the photo he sent Barnett was a picture of the nine-year-old girl since he took it from the girl's cell phone in response to the

other person requesting a photograph. (*Id.* at 89). Beach testified that Barnett "had text stating that some guys like to lick girls' vaginas. I said what, he says yeah, really. Trying to also entice me into." (*Id.* at 93). Beach testified that Barnett solicited specific acts in the text messages contained in State's exhibit two. (*Id.* at 94).

{¶9} Thereafter, the State moved for the admission of its exhibits. (*Id.* at 101). Exhibits one, two, and three were admitted over objection; the State withdrew exhibit four, the CDs containing the photographs of the text messages also contained in State's exhibit two; and, exhibits five and six were not admitted into evidence. (*Id.* at 101-104). The State rested. (*Id.* at 105). Thereafter, Barnett made a motion for acquittal, which was denied, and then he rested. (*Id.* at 105-107). After the presentation of the evidence, the matter was taken under advisement. (*Id.* at 118).

{¶10} On December 5, 2011, the trial court found Barnett guilty on Count Three of importuning, Count Four of attempted importuning, and Count Five of possession of criminal tools, and further found that Count Four was a lesser-included offense to Count Three. (Dec. 5, 2011 Tr. at 2-3); (Dec. 5, 2011 JE, Doc. No. 28). A pre-sentence investigation (PSI) report was ordered for sentencing. (*Id.*); (*Id.*).

{¶11} On February 9, 2012, a sentencing hearing was held. (Feb. 9, 2012 Tr. at 1-2). The State elected to proceed to sentence Barnett on Count Three. (*Id.* at 10); (Doc. No. 31). The trial court sentenced Barnett to five years of community control on Count Three, reserving a definite prison term of three years, and five years of community control on Count Five, reserving a definite prison term of 11 months. (Feb. 9, 2012 Tr. at 14-19); (Feb. 13, 2012 JE, Doc. No. 40). The trial court further ordered that the terms imposed in Counts Three and Five be served consecutively for an aggregate term of 47 months imprisonment in the event that Barnett violated his community control. (Feb. 9, 2012 Tr. at 19); (Feb. 13, 2012 JE, Doc. No. 40). Barnett was classified a Tier I Sex Offender. (Doc. No. 40, Court's Ex. A).

{¶12} On February 13, 2012, the trial court filed its judgment entry of sentence. (Doc. No. 40). On February 23, 2012, Barnett filed his notice of appeal. (Doc. No. 44). Barnett now appeals raising four[1] assignments of error. We elect to combine Barnett's second and third assignments of error for review.

### Assignment of Error No. I

**The trial court erred in its application of R.C. 2907.07 to the facts of this case rendering the statute unconstitutional as applied to the appellant under the first and fourteenth amendments to the U.S. Constitution.**

---

[1] Barnett actually raises three assignments of error, but his second assignment of error has both an "A" and a "B". We will treat part "B" as Barnett's third assignment of error for purposes of this opinion.

**{¶13}** In his first assignment of error, Barnett argues that R.C. 2907.07 was unconstitutionally applied in this case due to law enforcement's arbitrary and discriminatory enforcement. Particularly, Barnet argues that law enforcement initiated contact with him and attempted to solicit him to engage in sexual activity with a minor. Barnett also argues that his text messages were merely "about sex" and constitutionally protected under the First Amendment.

**{¶14}** The criminal offense of importuning is codified in R.C. 2907.07, which provides, in pertinent part:

> No person shall solicit another by means of a telecommunications device * * * to engage in sexual activity with the offender when the offender is eighteen years of age or older and * * * [t]he other person is a law enforcement officer posing as a person who is less than thirteen years of age, and the offender believes that the other person is less than thirteen years of age or is reckless in that regard.
> R.C. 2907.07(C)(2).

**{¶15}** This Court has concluded that the previous version of the importuning statute, particularly former R.C. 2907.07(E)(2), was not unconstitutionally vague, overbroad, or invalid under the First Amendment. *State v. Snyder*, 155 Ohio App.3d 453, 2003-Ohio-6399. Rejecting the First Amendment challenge in *Snyder*, this Court noted that:

> The statute does not restrict speech about sex in general, nor does it restrict adults and minors from communicating about sex. The statute also does not restrict speech about adults engaging in sexual conduct with minors. The statute prohibits only speech that solicits minors to engage in illegal sexual activity with adults. *Id.* at ¶ 29.

Concerning law enforcement's alleged solicitation in *Snyder*, this Court observed:

> The law permits a police officer to go as far as to suggest an offense and to provide the opportunity for the defendant to commit the offense. If the defendant is already disposed to commit the offense and acts pursuant to a criminal idea or purpose of his own, then there is no entrapment and the defendant can be found guilty. *Id.* at ¶ 36, quoting *State v. Laney*, 61 Ohio Misc.2d 688, 695 (1991).

{¶16} The record in this case demonstrates that law enforcement merely suggested an offense and provided Barnett with the opportunity to commit the offense. Detective Beach testified that, before he initiated contact with Barnett, he reviewed several of the text messages Barnett had already sent to the minor's mother, believing it was the minor, and he was advised by Lieutenant Lutes that the text messages were sexual in nature. (Nov. 14, 2011 Tr. at 45-47, 85). Beach testified that, at that point, he started texting Barnett to recreate the conversation he had already had with the minor's mother, and Barnett indicated he was talking

-11-

about having sex. (*Id*. at 59, 64, 68); (State's Exs. 2-3). Furthermore, the record demonstrates that Barnett was not merely talking *about* sex, but he was encouraging and suggesting sexual acts with the law enforcement officer he believed was a nine-year-old girl. (State's Exs. 2-3). While Barnett at first declined the opportunity to have sex with the alleged minor, he later changed his mind and asked the alleged minor for a full-body picture so he would know what she looked like "if [he] changed his mind about doing it with [her]." (*Id*.). Then, Barnett told the alleged minor "how to get some practice in" by getting naked, putting her finger in her vagina, and moving it in and out. (*Id*.). When the alleged minor text messaged that this made her "sore," Barnett told her that she just had to get used to it. (*Id*.). Then, when the alleged minor expressed concern that she could get pregnant, Barnett assured her that only happens if she has sex without a condom, and he always wears one. (*Id*.). When the alleged minor asked what else Barnett could teach her, Barnett told her that some girls suck on the guy's penis, and some guys lick the girl's vagina. (*Id*.). When the alleged minor asked if Barnett would do that to her (lick her vagina), Barnett text messaged, "[s]ure." Then Barnett, again, asked the alleged minor for a full body picture. (*Id*.). The next day, Barnett text messaged the alleged minor child, indicating that he "thought about it a lot last nite [sic] and I can't do it with you" because "[y]our just to [sic] little for me," and he advised her to "find some1 [sic] ur [sic] age."

(*Id.*). Based upon this record, we cannot conclude that law enforcement inappropriately solicited Barnett, as he argues, or that the importuning statute was otherwise unconstitutionally applied in this case.

{¶17} Barnett's first assignment of error is, therefore, overruled.

### Assignment of Error No. II

**The trial court erred as there was insufficient evidence to support its finding, the same being in violation of the due process clasue [sic] of the fourteenth amendment to the U.S. constitution and Article I, Section 1 & 16 of the Ohio Constitution[.]**

### Assignment of Error No. III

**The trial court erred as its finding was also agianst [sic] the manifest weight of the evidence.**

{¶18} In his second assignment of error, Barnett argues that his convictions were not supported by sufficient evidence since he did not initiate contact with the minor or the law enforcement officer and continually rejected law enforcement's solicitations to meet for sexual activity. Barnett further argues that his text messages were discussions *about* sex, protected speech under the First Amendment. In his third assignment of error, Barnett argues that his convictions were against the manifest weight of the evidence.

{¶19} When reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of

the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus.

{¶20} In determining whether a conviction is against the manifest weight of the evidence, on the other hand, a reviewing court must examine the entire record, "'[weigh] the evidence and all reasonable inferences, consider the credibility of witnesses and [determine] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967).

{¶21} The criminal offense of importuning is codified in R.C. 2907.07, provided above. "'Sexual activity' means sexual conduct or sexual contact, or both." R.C. 2907.01(C). "'Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex * * *." R.C. 2907.01(A). "'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

**{¶22}** The attempt statute, R.C. 2923.02, provides, in relevant part: "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." R.C. 2923.02(A). Finally, R.C. 2923.24(A) provides that: "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."

**{¶23}** Barnett's arguments lack merit. We have already rejected Barnett's argument that law enforcement inappropriately solicited him, and that the application of R.C. 2907.07(C)(2) was unconstitutional in this case. Barnett's argument that he continually rejected invitations to meet with the alleged minor child is also meritless. This Court has recognized that, for purposes of the importuning statute, "solicit does not simply mean to ask"; but rather, "to seek, to ask, to influence, to invite, to tempt, to lead on, to bring pressure to bear." *State v. Jain*, 2-09-25, 2010-Ohio-1712, ¶ 12, citing *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 68, citing 4 Ohio Jury Instructions (2001) 573, Section 523.03(6). *See also* 2 Ohio Jury Instructions CR 507.07(2) (2005). Viewing the text message conversation in a light most favorable to the State, there was sufficient evidence that Barnett influenced, tempted, and pressured the alleged minor child to engage in sexual activity. The fact that Barnett did not actually

meet with the alleged minor is irrelevant to whether or not he committed the crime of importuning since that crime was final after he sent the text messages. For these same reasons, we conclude that the State presented sufficient evidence on the attempted importuning conviction.

{¶24} The State also presented sufficient evidence that Barnett used his cell phone to send the text messages and commit the crime of importuning; and therefore, the State presented sufficient evidence that Barnett possessed a criminal tool; to wit: the cell phone. Aside from the testimony concerning the text messages sent to the alleged minor's cell phone, Detective Beach testified that law enforcement seized a cell phone from Barnett during his arrest that matched the phone number of the person texting the alleged minor. (Nov. 14, 2011 Tr. at 70-71).

{¶25} Finally, Barnett's convictions were not against the manifest weight of the evidence. The record contains credible evidence that Barnett solicited a law enforcement officer, who he believed was a minor child under the age of thirteen, to engage in sexual activity. No manifest miscarriage of justice occurred here.

{¶26} Barnett's second and third assignments of error are overruled.

**Assignment of Error No. IV**

**The defendant-appellant was prejudiced by ineffective assistance of counsel in violation of his right to counsel as guaranteed to him by the Sixth Amendment of the United States Constitution.**

{¶27} In his fourth and final assignment of error, Barnett argues that he was denied effective assistance of trial counsel because trial counsel failed to raise the affirmative defense of entrapment.

{¶28} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984).

{¶29} In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland*, 466 U.S. at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St. 3d 136, 141-142 (1989), citing *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976)

{¶30} Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bradley*, 42 Ohio St.3d at 142, citing *Strickland*, 466 U.S. at 691. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bradley*, 42 Ohio St.3d at 142; *Strickland*, 466 U.S. at 694.

{¶31} "[W]here the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute, the defense of entrapment is established and the accused is entitled to acquittal." *State v. Doran*, 5 Ohio St.3d 187, 192 (1983), citing *Sherman v. U.S.*, 536 U.S. 369, 372, 78 S.Ct. 819 (1958). Entrapment is not established, though, when government officials "merely afford opportunities or facilities for the commission of the offense," and the accused was predisposed to commit the offense. *Id.*, quoting *Sherman*, 356 U.S. at 372. While not exhaustive, the following facts are relevant to the accused's predisposition:

(1)  the accused's previous involvement in criminal activity of the nature charged, (2) the accused's ready acquiescence to the inducements offered by the police, (3) the accused's expert knowledge in the area of the criminal activity charged, (4) the

-18-

accused's ready access to contraband, and (5) the accused's willingness to involve himself in criminal activity. *Doran* at 192.

**{¶32}** Barnett has failed to demonstrate ineffective assistance of trial counsel. To begin with, it appears that trial counsel chose, as a matter of trial strategy, to deny Barnett's involvement in the crime altogether rather than admitting his involvement and asserting the affirmative defense of entrapment. Throughout the proceedings, trial counsel referred to "the person who is alleged to have made these texts" or the "alleged person on the other phone," and not his client. (Nov. 14, 2011 Tr. at 8-9). Generally, trial strategy does not constitute ineffective assistance of counsel even if it was ultimately unsuccessful. *Carter*, 72 Ohio St.3d at 558. Beyond that, we are not persuaded that Barnett was entitled to assert the affirmative defense of entrapment since he had previously sent sexual text messages to the minor child's mother believing it was the minor child, and he continued texting with law enforcement even after he was told the minor child's age. This shows that Barnett was predisposed to commit the criminal act, and the idea did not originate with law enforcement. Law enforcement merely provided Barnett with the opportunity to commit the offense. While at first Barnett expressed concern about engaging in sexual activity with the alleged minor (because it would be a big risk for him), by the end of the texting conversation Barnett was helping the minor child "get some practice in" and telling her he

would perform cunnilingus on her.  In light of the evidence presented, trial counsel was not ineffective for failing to raise the affirmative defense of entrapment.

{¶33} Barnett's fourth assignment of error is, therefore, overruled.

{¶34} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**