[Cite as *State v. Penny*, 2014-Ohio-2293.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff - Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | |
| THOMAS E. PENNY, SR. | : | Case No. 2013CA00245 |
| | : | |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Stark County Court
of Common Pleas, Case No.
2013CR0674

JUDGMENT:        Affirmed

DATE OF JUDGMENT:        May 27, 2014

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JOHN D. FERRERO                    PAUL F. ADAMSON
Prosecuting Attorney                    137 South Main Street, Suite 201
Akron, OH 44308

KATHLEEN O. TATARSKY
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza South, Suite 510
Canton, OH 44702

*Baldwin, J.*

{¶1}   Appellant Thomas E. Penny, Sr. appeals a judgment of the Stark County Common Pleas Court convicting him of importuning (R.C. 2907.07(B)), illegal use of a minor in nudity-oriented material or performance (R.C. 2907.323(A)(3)), and disseminating matter harmful to a juvenile (R.C. 2907.31(A)(1)).

<u>STATEMENT OF FACTS AND CASE</u>

{¶2}   In March of 2012, the mother of fourteen-year-old A.C. was looking at A.C.'s cell phone.  She found a nude picture of A.C. and an inappropriate message to an older man.  She contacted the National Center for Missing and Exploited Children (NCMEC) and an investigation ensued.   A.C. lived in Florida, while appellant lived in Stark County, Ohio. A.C. told law enforcement that she met appellant on Facebook. Shortly after meeting appellant on Facebook, A.C. told appellant that she was 14 years old.  Appellant was 52 years old.  At first they exchanged text messages and internet messages about school classes, but eventually their conversations included graphic and explicit discussions of sexual activity, and they sent each other nude photographs.

{¶3}   On September 19, 2012, the Perry Township Police Department obtained a search warrant for electronic devices at appellant's residence.   Appellant's wife and ten-year-old daughter were home when police arrived to execute the warrant. Appellant returned from the gym about 30 minutes later.  He agreed to a recorded interview with Det. Mindy Coleman, in which he admitted that he had been talking to A.C. since she friended him on Facebook.  He told Coleman that A.C. looked to him as a father figure, and he claimed that he did not know how old she was.  He admitted sending "one or two" nude pictures to A.C.

{¶4}     Appellant's laptop computer and cell phone were submitted to forensic examination, revealing numerous instances of sexually explicit text messages between appellant and A.C., and nude photographs which A.C. took at appellant's urging. Appellant also messaged a friend of A.C.'s that he loved A.C. and that they had discussed getting married, but he feared she would find someone else because she was young.   Examination of his cell phone and A.C.'s phone also revealed that appellant continued to contact A.C. after she told him she had been interviewed by law enforcement.  He used A.C.'s friend to continue talking to A.C., telling her to "stay ahead of things" and delete text messages.

{¶5}     Appellant was indicted by the Stark County Grand Jury on May 7, 2013, with one count of importuning, one count of illegal use of a minor in nudity-oriented material, and one count of disseminating matter harmful to a juvenile.  Appellant moved to suppress items seized from the search of his home on the grounds that the affidavit used to obtain the search warrant did not allege that appellant lived at the residence address in the affidavit or that he owned the residence.  The trial court overruled the motion, finding that the affidavit as a whole was sufficient to support the search of the address on Bramblebush Avenue in Massillon.

{¶6}     The case proceeded to jury trial in the Stark County Common Pleas Court. Appellant was convicted on all three charges.  At the sentencing hearing, the victim impact statement prepared by A.C.'s mother was read into the record, containing information that the victim had become suicidal and was cutting herself as a result of her relationship with appellant.  Appellant was sentenced to 12 months incarceration for importuning and 12 months incarceration for illegal use of a minor in nudity-oriented

material, to be served consecutively. He was sentenced to 180 days on the charge of disseminating matter harmful to a juvenile, to be served concurrently.

{¶7} Appellant assigns four errors to this Court on appeal:

{¶8} "I. THE TRIAL COURT ERRED IN DENYING SUPPRESSION AS TO THE EVIDENCE OBTAINED FROM THE SEARCH OF 1835 BRAMBLEBUSH.

{¶9} "II. THE EVIDENCE PRESENTED WAS INSUFFICIENT TO SUPPORT THE GUILTY VERDICT ON COUNT ONE, IMPORTUNING.

{¶10} "III. THE GUILTY VERDICT ON COUNT ONE, IMPORTUNING, WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶11} "IV. THE TRIAL COURT ERRED IN IMPOSING MAXIMUM CONSECUTIVE SENTENCES ON COUNTS ONE AND TWO."

I.

{¶12} In his first assignment of error, appellant argues the court erred in overruling his motion to suppress the search of his residence which led to the seizure of his cell phone and computer. He argues that the affidavit used to obtain the search warrant was faulty because it failed to connect appellant to the residence address named in the affidavit. The trial court found that although the affidavit did not assert that appellant lived at the residence subject to the search, it contained enough details when taken as a whole to link appellant to the address on Bramblebush Avenue.

{¶13} The Ohio Supreme Court has set forth the following standard for our review of a search warrant and accompanying affidavit:

{¶14} "In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate

court should substitute its judgment for that of the magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. (*Illinois v. Gates* [1983], 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 followed.)" *State v. George*, 45 Ohio St. 3d 325, 544 N.E.2d 640 (1989), paragraph two of the syllabus.

{¶15} Further, the Fourth Amendment exclusionary rule should not be applied so as to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause. *Id.* at paragraph three of the syllabus, citing *U.S. v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

{¶16} The affidavit did not aver that appellant lived at the residence to be searched, namely 1835 Bramblebush Avenue N.W., Massillon, Ohio. However, the affidavit states that concealed in the residence are computers, cellular telephones, ipods, ipads, image storage equipment, or otherwise obscene material and other instrumentalities and fruits of the crimes of importuning, disseminating matter harmful to juveniles, and/or illegal use of a minor in nudity-oriented material. The affiant, Det. Mindi Coleman, set forth facts concerning the text messages and emails exchanged

between A.C., identified in the affidavit as "Jane Doe," and appellant. The affidavit concludes that the affiant believes there is probable cause to believe that the items are being concealed in the residence at 1835 Bramblebush Avenue.

{¶17} Counsel for appellant conceded for purposes of the suppression hearing that appellant lived at 1835 Bramblebush, and no evidence was presented at the suppression hearing. Rather, the trial court heard only the legal arguments of the parties. Although the affidavit is lacking an allegation that appellant resided at this address, the trial court found that from the detail provided on the activity conducted by appellant and the request to search one address for the computers and cell phones concealed there, common sense implies that there is a link between appellant and the address even if the affidavit does not explicitly set forth how the affiant made that link. Based on the highly deferential standard to be applied by both trial courts and appellate courts in reviewing the issuance of a search warrant as set forth in *George*, *supra*, we cannot find that the court erred in this determination.

{¶18} Further, although no evidence was taken by the court at the suppression hearing, the evidence presented at trial would support a finding that the officer relied in good faith on the warrant even if the warrant was unsupported by probable cause due to the failure to directly link appellant to the residence address of the search. Det. Mindi Coleman testified at trial that in March of 2012 when she received reports from the NCMEC and the Lake County Florida Sheriff's Office, she determined appellant's address to be Bramblebush in Perry Township. Tr. Vol. I, 119-120. Det. Coleman was both the affiant of the affidavit in support of the search warrant and the officer who executed the search warrant. Therefore, while the court did not rely on the "good faith"

exception to the exclusionary rule as set forth in *U.S. v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the record reflects that the detective did act in objectively reasonable reliance on the warrant which was issued in reliance on her affidavit.

{¶19}   The first assignment of error is overruled.

## II., III.

{¶20}   In his second and third assignments of error, appellant argues that the state failed to present sufficient evidence of the crime of importuning, and that the jury lost its way in convicting him of importuning.  He specifically argues that there was no evidence presented of any risk, significant or remote, that appellant's "sexting" with A.C. would result in sexual conduct with her, due to the geographic distance between them.

{¶21}   In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"  *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

{¶22}   An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

{¶23} Appellant was convicted of importuning in violation of R.C. 2907.07(B):

{¶24} "(B)(1) No person shall solicit another, not the spouse of the offender, to engage in sexual conduct with the offender, when the offender is eighteen years of age or older and four or more years older than the other person, and the other person is thirteen years of age or older but less than sixteen years of age, whether or not the offender knows the age of the other person."

{¶25} Pursuant to R.C. 2901.21(B), when a statute defining an offense neither specifies the degree of culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense.

{¶26} "Recklessness" is defined by R.C. 2901.22(C), which states:

{¶27} "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

{¶28} R.C. 2907.07(B) specifies no degree of culpability. Neither does it plainly indicate a purpose to impose strict criminal liability, except with respect to the perpetrator's knowledge of the victim's age. Therefore, in order to prove a violation of R.C. 2907.07(B), the evidence must demonstrate that the behavior which is alleged to constitute a solicitation for sexual conduct was performed recklessly.

{¶29} Appellant argues that he did not disregard a risk that his conduct would cause a certain result, i.e. sexual conduct. He argues that there was no evidence presented to suggest that sexual conduct would result from the exchange of text

messages, as the victim was in Florida and he was in Ohio, with no discussion between the two of meeting.

{¶30} Appellant has confused the behavior with which he must have acted with the mental state of "recklessly." The statute prohibits solicitation, not sexual conduct. Therefore, the mental state of recklessly applies to the act of solicitation and whether he disregarded the risk that his conduct would cause the result of solicitation of sexual conduct, not whether he disregarded a risk of actual sexual conduct.

{¶31} In *State v. J.W.*, 2nd Dist. Miami No. 04CA5, 2004-Ohio-3404, the defendant argued that he did not act recklessly because there was no evidence that his comment to the victim was intended to actually solicit oral sex. In rejecting this argument, the court stated:

{¶32} "In order to find that the Defendant acted recklessly, the trier of fact must have been able to find, beyond a reasonable doubt, that when the Defendant made the remark to the ten-year old victim the Defendant acted with a perverse disregard that his conduct was likely to cause a certain result. In this instance, that result is a solicitation to engage in oral sex. Whether he actually intended to solicit oral sex or the victim believed that he'd been solicited is immaterial." *Id*. at ¶20.

{¶33} Solicit within the meaning of the importuning statute means more than simply to ask. *State v. Jain*, 3rd Dist. Auglaize No. 2-09-25, 2010-Ohio-1712, ¶12. Solicit means to "seek, to ask, to influence, to invite, to tempt, to lead on, to bring pressure to bear." *Id*.

{¶34} The record is replete with messages appellant sent to A.C. in which he invited her to engage in various forms of sexual conduct with him in very graphic and

explicit language. Whether or not there was any risk of actual sexual conduct due to the geographic distance between the two is immaterial to the crime of importuning, as appellant need only act recklessly with regard to the actual act of solicitation, not to the result of the solicitation.

{¶35} The second and third assignments of error are overruled.

IV.

{¶36} In his final assignment of error, appellant argues that the trial court erred in sentencing him to maximum sentences for importuning and illegal use of a minor in nudity-oriented material, and in sentencing him consecutively.

{¶37} The Supreme Court of Ohio in *State v. Kalish,* 120 Ohio St.3d 23, 2008–Ohio–4912, 896 N.E.2d 124, set forth a two step process for examining felony sentences. The first step is to "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law." *Id.* at ¶ 4. If this first step is satisfied, the second step requires that the trial court's decision be reviewed under an abuse of discretion standard. *Id.* An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Id.* at ¶ 19.

{¶38} R.C. 2929.12 sets forth the factors the court is to consider in felony sentencing:

{¶39} "(A) Unless otherwise required by section 2929.13 or 2929.14 of the Revised Code, a court that imposes a sentence under this chapter upon an offender for a felony has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code. In

exercising that discretion, the court shall consider the factors set forth in divisions (B) and (C) of this section relating to the seriousness of the conduct, the factors provided in divisions (D) and (E) of this section relating to the likelihood of the offender's recidivism, and the factors set forth in division (F) of this section pertaining to the offender's service in the armed forces of the United States and, in addition, may consider any other factors that are relevant to achieving those purposes and principles of sentencing.

{¶40}  "(B) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:

{¶41}  "(1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.

{¶42}  "(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.

{¶43}  "(3) The offender held a public office or position of trust in the community, and the offense related to that office or position.

{¶44}  "(4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.

{¶45}  "(5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.

{¶46}  "(6) The offender's relationship with the victim facilitated the offense.

{¶47} "(7) The offender committed the offense for hire or as a part of an organized criminal activity.

{¶48} "(8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.

{¶49} "(9) If the offense is a violation of section 2919.25 or a violation of section 2903.11, 2903.12, or 2903.13 of the Revised Code involving a person who was a family or household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parentis of one or more of those children.

{¶50} "(C) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is less serious than conduct normally constituting the offense:

{¶51} "(1) The victim induced or facilitated the offense.

{¶52} "(2) In committing the offense, the offender acted under strong provocation.

{¶53} "(3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.

{¶54} "(4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense.

{¶55}   "(D) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is likely to commit future crimes:

{¶56}   "(1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing, under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or under post-release control pursuant to section 2967.28 or any other provision of the Revised Code for an earlier offense or had been unfavorably terminated from post-release control for a prior offense pursuant to division (B) of section 2967.16 or section 2929.141 of the Revised Code.

{¶57}   "(2) The offender previously was adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code prior to January 1, 2002, or pursuant to Chapter 2152. of the Revised Code, or the offender has a history of criminal convictions.

{¶58}   "(3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code prior to January 1, 2002, or pursuant to Chapter 2152. of the Revised Code, or the offender has not responded favorably to sanctions previously imposed for criminal convictions.

{¶59}   "(4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.

{¶60}   "(5) The offender shows no genuine remorse for the offense.

{¶61} "(E) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is not likely to commit future crimes:

{¶62} "(1) Prior to committing the offense, the offender had not been adjudicated a delinquent child.

{¶63} "(2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.

{¶64} "(3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.

{¶65} "(4) The offense was committed under circumstances not likely to recur.

{¶66} "(5) The offender shows genuine remorse for the offense."

{¶67} The judge noted on the record at the sentencing hearing that the child victim had become suicidal, and had started cutting herself after the contact with appellant. She had a full year of therapy in order to stop harming herself. The victim's mother noted that her relationship with A.C. suffered and life became "unbearable" at times. The judge noted that this was not an accident, but a long-term relationship, and that the maximum sentence was necessary to send a message to the community that Facebook should not be used to prey on young people. Tr. Sent. 15. The trial court noted in the sentencing entry that the court considered the principles and purposes of sentencing under R.C. 2929.11, and had balanced the seriousness and recidivism factors of R.C. 2929.12. The trial court did not abuse its discretion in sentencing appellant to the maximum sentence on the convictions of importuning and illegal use of a minor in nudity-oriented material.

{¶68} The imposition of consecutive sentences is governed by R.C. 2929.14(C)(4):

{¶69} "(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

{¶70} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

{¶71} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

{¶72} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

{¶73} In the sentencing entry, the court found that consecutive sentences were necessary to protect the public from future crime and to punish appellant, and that consecutive sentences are not disproportionate to the seriousness of appellant's

conduct and the danger he poses to the public. The court further found that at least two of the offenses were committed as part of one or more courses of conduct, the harm caused by the offenses was so great or unusual that no single prison term adequately reflected the seriousness of his conduct, and that appellant's history of criminal conduct demonstrated that consecutive sentences are necessary to protect the public from future crime by appellant. In addressing consecutive sentencing during the sentencing hearing, the court noted that appellant had been to prison before. The court stated that consecutive sentencing was the only way to protect the community and to consider the psychological harm caused to the victim. The court also expressed concern that once appellant realized he was about to be caught, he contacted A.C. through her friend, and then tried to get rid of the evidence. The trial court did not abuse its discretion in sentencing appellant to consecutive sentences.

{¶74} The fourth assignment of error is overruled.

{¶75} The judgment of the Stark County Common Pleas Court is affirmed. Costs are assessed to appellant.

By: Baldwin, J.

Farmer, P.J. and

Wise, J. concur.