[Cite as *State v. Kelly*, 2021-Ohio-2007.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 20CA5 |
| Plaintiff-Appellee, | : | |
| | : | |
| v. | : | <u>DECISION AND JUDGMENT</u> |
| | : | <u>ENTRY</u> |
| KEVIN M. KELLY, | : | |
| | : | |
| Defendant-Appellant. | : | **RELEASED: 06/11/2021** |

_____
APPEARANCES:

Kathryn Cornelius-Blume, Lancaster, Ohio, for Appellant.

Ryan R. Black, Hocking County Prosecuting Attorney, and Ryan W. Stickel, Assistant Hocking County Prosecutor, Logan, Ohio, for Appellee.
_____

Wilkin, J.

{¶1} This is an appeal from a Hocking County Court of Common Pleas judgment of conviction in which a jury found Appellant, Kevin M. Kelly, guilty of importuning. The trial court sentenced Kelly to 30 months in prison and classified him as a Tier I sexual offender. Kelly challenges his conviction and presents five assignments of error for our review.

{¶2} Kelly's first assignment of error disputes the trial court's jury instruction of adding the mental state recklessly instead of purposely for the finding of solicitation. Related to the first issue, Kelly in his second assignment of error asserts that the state failed to prove he purposely solicited the minor M.F. We reject both arguments by applying the clear statutory language in R.C. 2901.21(C)(1). Since importuning does not include a degree of culpability and it

is not a strict liability offense, the correct mental state is recklessly.  Thus, the court's jury instructions were proper in requiring the state to prove Kelly recklessly solicited M.F. and not purposely.

{¶3} In his third assignment of error, Kelly maintains that his conviction is against the manifest weight of the evidence because his alleged statements to M.F. did not rise to soliciting a minor to perform sexual conduct.  But one witness testified that she heard Kelly ask M.F. if she had sex and how it felt, and then he offered to show M.F. by the sheep barn, where it is dark.  We find the invitation to show M.F. is solicitation.  Kelly further claims that even if the statements were sufficient to demonstrate solicitation, the state failed to prove he made them.  However, several of the state's witnesses identified Kelly as the person who directed the statements to M.F.  Therefore, we determine the jury could reasonably have found all elements of the offense and it did not lose its way in finding Kelly guilty of importuning.

{¶4} In Kelly's fourth assignment of error he challenges the trial court's admission of another minor's testimony, D.S., who asserted that the same male who approached M.F. also interacted with him.  The male asked D.S. if he wanted to ride with him.  We overrule Kelly's argument because the testimony was properly admitted to prove a material issue in dispute–Kelly's identity.

{¶5} Finally, in his fifth assignment of error, Kelly argues his trial counsel was ineffective for failing to subpoena June Stevens who would have testified that a different male approached M.F., and also for failing to object to the testimony of Z.R.  We reject both claims.  The calling of a witness falls within the

rubric of trial strategy and Kelly fails to demonstrate he was prejudiced by counsel's representation.

FACTS AND PROCEDURAL BACKGROUND

{¶6} Kelly was indicted for committing the offense of importuning.  He pleaded not guilty and the matter proceeded to a three-day jury trial.  At trial, the state presented the testimony of 11 witnesses and Kelly testified on his own behalf.  Kelly also called his friend Angie McManus as a witness.

{¶7} Kelly's indictment was based on his conduct on September 12, 2019, at the Hocking County Fair.  That night, Kelly went to the fair to ride the rides.  M.F., who was ten years old, was also at the fair with her legal custodial Great-Aunt Cathy.  M.F. was riding the rides with her friends, including E.H., who was 12 years old.  E.H. was in charge of watching out for M.F.  During the Hurricane ride that goes around and up and down, M.F. was in the same four-person spaceship cart as her friend Kitty.  Kelly was also in the same cart.  E.H. was in the next four-person cart.  As the ride was starting, Kelly asked M.F. "if [she] had sex and what did it feel like[.]"

{¶8} E.H. also heard Kelly ask M.F. if she had sex and how it felt.  In addition, E.H. heard Kelly tell M.F. "he could like show you in the dark by the sheep barn, because it's really dark over there."  After hearing Kelly's comments, E.H. went over to M.F.'s cart, picked M.F. up and ran to her grandmother who was standing close by watching over the girls.  Both E.H. and M.F. were afraid because of Kelly's comments.

**{¶9}** Within a couple of minutes, E.H.'s mother, Maria, came and saw E.H. and a group of kids "terrified and scared."  All minors pointed to Kelly as the person saying inappropriate things to them.  Maria confronted Kelly and he began poking her as hard as he could in the shoulder, stating "I'll poke you if I want to, little girl."  At this point, Maria went to the sheriff's booth at the fair to report Kelly's behavior.  Kelly also went to the sheriff's booth and was later interviewed at the Sheriff's Office by Detective Bill DeWeese.  In his interview and at trial, Kelly denied speaking to any minor females at the fair.

**{¶10}** After deliberating for about four hours, the jury returned with a guilty verdict as to the sole count of importuning, a third-degree felony.  At the sentencing hearing, the trial court imposed a 30-month prison term and classified Kelly as a Tier I sexual offender.[1]

ASSIGNMENTS OF ERROR

I.      APPELLANT'S DUE PROCESS RIGHTS WERE VIOLATED
        WHEN THE TRIAL COURT PRESENTED INCORRECT JURY
        INSTRUCTIONS.

II.     THERE WAS INSUFFICIENT EVIDENCE PRESENTED AT
        TRIAL TO CONVICT APPELLANT OF IMPORTUNING.

III.    APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST
        WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.

IV.     THE TRIAL COURT ERRED WHEN IT PERMITTED TESTIMONY
        OF OTHER BAD ACTS.

V.      TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE AT
        APPELLANT'S JURY TRIAL.

---

[1] Kelly was granted judicial release on December 22, 2020.

ASSIGNMENT OF ERROR I

{¶11} In his first assignment of error, Kelly maintains the trial court erred in instructing the jury as to the degree of culpability for the offense of importuning. The trial court instructed the jury that recklessly is the appropriate mental state for the "solicit" element, which according to Kelly is erroneous because the correct mens rea is "purposeful." In support of his position, Kelly references the legislative intent behind R.C. 2907.07 claiming it mandates the higher mental state purposely.

{¶12} The state disagrees that we should look into legislative intent when clear statutory language in R.C. 2901.21(C) provides that recklessly is the appropriate degree of culpability. Further, the state observes that although this is a case of first impression for the court, other appellate courts have applied the statutory language and held that recklessly is the appropriate mental state for importuning.

I.   LAW

{¶13} We previously summarized the trial court's duty to provide the jury with full and complete instructions:

> A trial court generally has broad discretion in deciding how to fashion jury instructions. *State v. Hamilton*, 4th Dist. Scioto No. 09CA3330, 2011-Ohio-2783, 2011 WL 2397088, ¶ 69. However, "a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. "Additionally, a trial court may not omit a requested instruction, if such instruction is 'a correct, pertinent statement of the law and [is] appropriate to the facts * * *.' " *Hamilton* at ¶ 69, quoting *State v. Lessin*, 67 Ohio St.3d 487, 493, 620 N.E.2d 72 (1993). "When reviewing a trial court's jury instructions, the proper standard of

review for an appellate court is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case." *State v. Ellis*, 5th Dist. Fairfield No. 02 CA 96, 2004-Ohio-610, 2004 WL 251809, ¶ 19.

*State v. Jones*, 4th Dist. Ross No. 16CA3574, 2018-Ohio-239, ¶ 10.

**{¶14}** "An abuse of discretion connotes more than a mere error of judgment; it implies that the court's attitude is arbitrary, unreasonable, or unconscionable." *State v. Ables*, 4th Dist. Pickaway No. 11CA22, 2012-Ohio-3377, ¶ 9, citing *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

## II.  ANALYSIS

**{¶15}** Kelly was indicted of violating R.C. 2907.07(A) that provides: "No person shall solicit a person who is less than thirteen years of age to engage in sexual activity with the offender, whether or not the offender knows the age of such person."  The trial court instructed the jury:

> The defendant is charged with importuning.  Before you can find the defendant guilty, you must find beyond a reasonable doubt tha[t] on or about the 12th day of September, 2019 and in Hocking County, Ohio, the defendant recklessly solicited a person under the – under 13 years of age to engage in sexual activity with the defendant, whether or not the defendant knew the age of such person.

**{¶16}** The trial court's instruction of requiring a finding that Kelly acted recklessly is consistent with the unambiguous language in R.C. 2901.21(C). "When language defining an element of an offense that is related to knowledge or intent or to which mens rea could fairly be applied neither specifies culpability nor plainly indicates a purpose to impose strict liability, the element of the offense is established only if a person acts recklessly."  R.C. 2901.21(C)(1).  The offense

of importuning per R.C. 2907.07(A) does not include a degree of culpability and Kelly does not argue that the importuning statute imposes strict liability.  So by applying the language in R.C. 2901.21(C)(1), recklessly is the appropriate mens rea.

{¶17} Our application of the definite statutory language is consistent with the Supreme Court's directive that the statute should be applied as written: "The second sentence instructs us to impose the default mens rea of recklessness when the section defining the offense does not specify a mens rea and the section does not plainly indicate an intent to impose strict liability." *State v. Johnson*, 128 Ohio St.3d 107, 2010-Ohio-6301, 942 N.Ed.2d 347, ¶ 19, citing former R.C. 2901.21(B).  Moreover, we find the decisions from the Fifth and Second District Courts of Appeals persuasive.  The Fifth District held that "in order to prove a violation of R.C. 2907.07(B), the evidence must demonstrate that the behavior which is alleged to constitute a solicitation for sexual conduct was performed recklessly."  *State v. Penny*, 5th Dist. Stark No. 2013CA00245, 2014-Ohio-2293, ¶ 28.  Similarly, the Second District found:

> R.C. 2907.07(A) specifies no degree of culpability. Neither does it plainly indicate a purpose to impose strict criminal liability, except with respect to the perpetrator's knowledge of the victim's age. Therefore, in order to be sufficient to prove criminal liability for an alleged R.C. 2907.07(A) violation, the evidence must demonstrate that the conduct which the alleged solicitation for sex involved was performed recklessly, as that is defined by R.C. 2901.22(C).

*In re J.W.*, 2d Dist. Miami No. 04CA5, 2004-Ohio-3404, ¶ 19.

{¶18} Kelly, on the other hand, does not cite to any caselaw to support his position that purposely is the appropriate mens rea.  He argues that purposely is

the correct degree of culpability based on legislative intent from a 1973 comment. However, the Supreme Court has made it clear that the determination of legislative intent is largely established from the plain language of a statute. *Summerville v. Forest Park*, 128 Ohio St.3d 221, 2010-Ohio-6280, 943 N.E.2d 522, ¶ 18, citing *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 11, citing *State ex rel. Burrows v. Indus. Comm.*, 78 Ohio St.3d 78, 81, 676 N.E.2d 519 (1997).  Accordingly, " '[w]e apply a statute as it is written when its meaning is unambiguous and definite.' "  *Id.*, quoting *Hubbell* at ¶ 11, citing *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478.  R.C. 2901.21(C)(1) is unambiguous and definite in that recklessly is the degree of culpability for a violation of the importuning statute, R.C. 2907.07(A).

{¶19} We also reject Kelly's claim that the correct degree of culpability is the heightened purposely based on the use of the word "knows" with regard to the age of the victim.  Kelly relies on the requirement that the victim must be less than 13 years of age "whether or not the offender knows the age of such person." R.C. 2907.07(A).  But there is no conduct when it comes to the age of the victim. It is a matter of fact as to the age of the victim when the solicitation occurs.  The only place a degree of culpability is missing in the importuning provision is before "solicit."  *See* R.C. 2907.07(A); *see also In re J.W.* at ¶ 19 ("Neither does it plainly indicate a purpose to impose strict criminal liability, except with respect to the perpetrator's knowledge of the victim's age.")

**{¶20}** Therefore, we find the trial court properly instructed the jury that they must find Kelly recklessly solicited M.F.  Having rejected Kelly's arguments, we overrule his first assignment of error.

ASSIGNMENT OF ERROR II

**{¶21}** In his second assignment of error, Kelly reiterates his claim that the appropriate degree of culpability for importuning is "purposefully" and further argues that the state failed to present sufficient evidence establishing he purposely solicited the victim.  The state echoes its response from the first argument that the proper mental state is recklessly and that it proved each element of the offense of importuning.

**{¶22}** We find that Kelly concedes this issue on appeal.  First, in his appellate brief, Kelly states "[t]he state simply presented evidence that Mr. Kelly may have, with heedless indifference, attempted to engage in sexual activity with the victim."  Heedless indifference is the definition of recklessly.  *See* R.C. 2901.22(C).  Second, during oral argument, Kelly submitted that if the mens rea required for solicitation is recklessly, then the state met its burden of establishing sufficient evidence to procure his conviction.  Based on our resolution of the first assignment of error that the proper degree of culpability for importuning is recklessly, we overrule Kelly's second assignment of error.

ASSIGNMENT OF ERROR III

**{¶23}** In his third assignment of error, Kelly challenges his conviction as being against the manifest weight of the evidence.  First, Kelly claims the jury lost its way by finding he recklessly solicited M.F. when only one minor testified that

after asking M.F. if she had sex and how it felt, he could show her by the sheep barn. According to Kelly, the single statement from E.H. is insufficient to prove his guilt. Second, Kelly maintains he was not the person who interacted with M.F. and that no one identified him as the perpetrator right after the incident, including E.H., who failed to identify him within hours in a photo-lineup.

{¶24} The state disagrees that the jury lost its way in convicting Kelly. The state argues that even without E.H.'s statement that Kelly offered to take M.F. to the sheep barn and show her, the statement of asking M.F. if she had sex and how it felt is sufficient to demonstrate Kelly solicited M.F. On the issue of identification, the state highlights the fact that E.H. and Z.R. both identified Kelly in court as the perpetrator.

## I. LAW

{¶25} In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

**{¶26}** The weight and credibility of evidence are to be determined by the trier of fact. *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 132. The trier of fact "is free to believe all, part or none of the testimony of any witness," and we "defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility." *State v. Dillard*, 4th Dist. Meigs No. 13CA9, 2014-Ohio-4974, ¶ 28, citing *State v. West*, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23.

**{¶27}** In addition, "[a] verdict is not against the manifest weight of the evidence because the finder of fact chose to believe the State's witnesses." *State v. Chancey*, 4th Dist. Washington No. 15CA17, 2015-Ohio-5585, ¶ 36, citing *State v. Wilson,* 9th Dist. Lorain No. 12CA010263, 2014-Ohio-3182, ¶ 24, citing *State v. Martinez,* 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16. Moreover, " 'While the jury may take note of inconsistencies and resolve or discount them accordingly, * * * such inconsistences do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' " *State v. Corson*, 4th Dist. Pickaway No. 15CA4, 2015-Ohio-5332, ¶ 31, quoting *State v. Proby*, 10th Dist. Franklin No.15AP-1067, 2015-Ohio-3364, ¶ 42, citing *State v. Gullick*, 10th Dist. Franklin No. 13AP-317, 2014-Ohio-1642, ¶ 10.

II.  ANALYSIS

A.  Solicit

**{¶28}** Kelly was convicted of committing the offense of importuning in violation of R.C. 2907.07(A).  The statute provides: "No person shall solicit a person who is less than thirteen years of age to engage in sexual activity with the offender, whether or not the offender knows the age of such person."  R.C. 2907.07(A).  Pursuant to R.C. 2907.01(C), sexual activity is defined as sexual conduct or sexual contact.  Here, sexual conduct applies and is defined in R.C. 2907.01(A) as:

> vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

**{¶29}** The term "solicit" is not statutorily defined.  Thus, appellate courts have applied the definition as stated in the Ohio Jury Instructions that provides: "Solicited means to seek, to ask, to influence, to invite, to tempt, to lead on, or to bring pressure to bear."  *Ohio Jury Instructions*, CR Section 507.07(2) (Rev. Jan. 23, 2010); *See State v. Petty*, 10th Dist. Franklin No. 15AP-950, 2017-Ohio-1062, ¶ 77; *State v. Kent*, 8th Dist. Cuyahoga No. 98863, 2013-Ohio-2461, ¶ 14.  Therefore, "even in the absence of evidence that the defendant 'asked' the minor to engage in sexual activity, a defendant may still be found guilty of importuning under R.C. 2907.07 if there is evidence that the defendant sought, influenced, invited, tempted, led, or pressured the victim to engage in sexual activity."  *Kent* at ¶ 14.

**{¶30}** As we held earlier in the first assignment of error, recklessly is the appropriate degree of culpability and is defined in R.C. 2901.22(C) as:

A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

**{¶31}** M.F. testified that Kelly asked her if she had sex and how it felt. M.F.'s account of the incident was corroborated by two other minors, E.H. and Z.R., who also heard Kelly make that statement. E.H. also testified that Kelly told M.F. he could show her by the sheep barn where it is dark. M.F.'s failure to elaborate regarding the additional statement Kelly made was explained by her legal custodial Great-Aunt Cathy, who testified that M.F. is a few years behind intellectually and has a hard time talking to strangers. This further recollection by E.H. is sufficient to demonstrate that Kelly invited M.F., a ten-year-old minor, to engage in sexual activity. " '[T]he testimony of one witness, if believed by the jury, is enough to support a conviction.' " *State v. Mack*, 4th Dist. Washington No. 17CA35, 2018-Ohio-5165, ¶ 15, quoting *State v. Strong,* 10th Dist. Franklin No. 09AP-874, 2011-Ohio-1024, ¶ 42.

**{¶32}** With E.H.'s statement, we decline to reach the state's argument that simply asking M.F. if she liked sex is enough to prove solicitation. Here, the jury had the additional evidence from E.H. of Kelly inviting M.F. to the dark sheep barn to have sexual activity. We thus conclude that the jury did not lose its way in finding that Kelly solicited M.F. simply because it believed E.H.

B.  Identity

{¶33} Kelly asserts that the jury lost its way by convicting him because he was not the person who interacted with M.F.  Specifically, Kelly points out that M.F. did not identify him and she could not recall whether he wore a hat or not, and more importantly, E.H. was unable to identify him in a photo-lineup right after the incident.  Kelly, however, disregards other evidence establishing his identity.

{¶34} We first begin with E.H.  A few hours after Kelly made his statements to M.F., E.H. went to the Sheriff's Office and was interviewed.  E.H. was provided with a photo-lineup that included Kelly.  From the photo-lineup, she identified Kelly as the offender but with only 5% certainty.  But when she was testifying and was confronted with Kelly face-to-face for the first time since the incident, she identified him in court as the person who solicited M.F.  On the stand, E.H. was certain Kelly was the person who made the statements to M.F.  E.H. explained that there is a difference in seeing an individual in person as opposed to in a photograph.

{¶35} Z.R. was another minor who was at the fair and waiting in line at the Hurricane ride when M.F. was seated in the same cart as Kelly.  Z.R. heard Kelly ask M.F. if she had sex and how it felt.  Z.R. identified Kelly in court as the person who solicited M.F.  During her testimony, Z.R. acknowledged that she initially identified the individual as a bald male, but she explained it was because of the cowboy hat Kelly was wearing.

{¶36} The cowboy hat was another item E.H.'s mother, Maria, recalls of the male she confronted at the fair.  Maria arrived to see a group of kids, "terrified

and scared," that included Z.R. and E.H. who informed her of what occurred.  All kids pointed to the "same guy."  Maria identified State's Exhibit 1-1 as the hat the male she confronted at the fair was wearing.  Detective DeWeese testified that State's Exhibit 1-1 is a still photograph of Kelly taken from his video recorded interview.  The state's exhibit shows Kelly with a cowboy hat.

{¶37} Further, during Kelly's interview with Detective DeWeese, Kelly admitted to having a confrontation with one of the parents and according to the detective, Kelly matched the description given by the minors at the time of the incident.  Similarly, Captain Alford identified Kelly as the individual he interviewed and who admitted to having a confrontation with one of the parents.  Captain Alford also testified that Kelly matched the description provided by the minors the night of the incident.

{¶38} Therefore, there was competent credible evidence that Kelly was the person who solicited M.F.  We thus conclude that the jury could reasonably have found all the elements of the offense and it did not lose its way finding Kelly guilty of importuning.  Kelly's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

{¶39} In his fourth assignment of error, Kelly argues the trial court erred in permitting the testimony of the minor D.S.  According to Kelly, D.S.'s testimony that Kelly asked him to ride together was prejudicial, confused the jury and was not required to establish a timeline in assisting to identify Kelly.  In response, the state argues that D.S.'s testimony was relevant to establish Kelly's identity and

did not include any bad acts that were not previously testified to by other witnesses.

## I. LAW

**{¶40}** "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). "The admissibility of other acts evidence pursuant to Evid.R. 404(B) is a question of law" as to one aspect of the analysis, but also requires analysis of the trial court's decision under the abuse of discretion standard of review. *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 22, 30.

**{¶41}** The threshold question is whether the evidence is relevant, that is, "it tends 'to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Id.* at ¶ 24, quoting Evid. R. 401. When considering other acts, "the court must evaluate whether the evidence is relevant *to the particular purpose* for which it is offered." (Emphasis sic.) *Id.* at ¶ 26. Further, the "nonpropensity purpose for which the evidence is offered must go to a 'material' issue that is actually in dispute between the parties." *Id.* at ¶ 27, citing *Huddleston v. United States*, 485 U.S. 681, 686, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

**{¶42}** The next step in the analysis is whether the other acts evidence "is nevertheless more prejudicial than probative." *Id.* at ¶ 29, citing *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20. Evid.R. 403(A) requires exclusion of evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." This weighing analysis is highly fact-specific and balancing the risk of inclusion involves the exercise of judgment. *Hartman* at ¶ 30. Thus, the trial court's determination here should be reviewed for an abuse of discretion. *Id.* "An abuse of discretion connotes more than a mere error of judgment; it implies that the court's attitude is arbitrary, unreasonable, or unconscionable." *State v. Ables*, 4th Dist. Pickaway No. 11CA22, 2012-Ohio-3377, ¶ 9, citing *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

## II. ANALYSIS

**{¶43}** When Kelly was interviewed by law enforcement the night of the incident and at trial he contested he was the perpetrator, stating that he was misidentified. Thus, Kelly's identity was a material issue in dispute. Based on that, prior to trial, the state filed notice of its intent to use other acts evidence to challenge Kelly's claim that M.F. and the other minors are mistaking him for someone else. Specifically, the state argued "the evidence would be used primarily to establish identity, and absence of mistake proving a coordinated plan to engage in this behavior and the motive of that plan."

**{¶44}** D.S. was called as a witness by the state for that purpose. Kelly objected that the testimony's probative value does not outweigh the prejudicial

effect of inflaming the jury. The state maintained that D.S.'s testimony is necessary to "help solidify the timeline of where Mr. Kelly went from the incident and then where he ended up, and then where he ended up from the ride to the next ride and then to the sheriff's office." The trial court overruled Kelly's objection and simply allowed the testimony for the purpose of a timeline.

{¶45} We find that D.S.'s testimony was relevant and necessary to demonstrate Kelly's identity. D.S.'s testimony was relevant to establish the timeline of Kelly's movements just before Maria confronted him. E.H. testified that after Kelly made his statements to M.F., Kelly went to another ride at the fair, the Cages. Z.R. testified that after she overheard Kelly solicit M.F., she joined M.F. and E.H. and went to E.H.'s grandmother. There, Z.R. updated her friend D.S. of what occurred and saw D.S. go to the same ride as Kelly and stand in line. Z.R. saw D.S. interact with Kelly while standing in line.

{¶46} D.S. testified that he was at the Hocking County Fair the night of September 12, 2019, with a group of his friends. While there, he was approached by his best friend's friend and she was crying. D.S. was then informed of the situation and he began following the other kids, when someone pointed out a male individual as the perpetrator. D.S. stood in line for the next ride, the Cages, right behind the identified male. While D.S. and the male, who was later identified as Kelly, were waiting in line, Kelly asked D.S. if he wanted to ride the ride with him. D.S. said no and he returned to the group of kids. D.S.'s testimony corroborated statements from other witnesses regarding Kelly's movement at the fair after he solicited M.F.

{¶47} We next find that D.S.'s testimony was not more prejudicial than probative. D.S. simply testified that Kelly asked him to ride together. This statement does not rise to solicitation. Moreover, Z.R. previously testified regarding D.S.'s interaction with Kelly and Kelly's request to ride together. Therefore, we hold that the trial court did not abuse its discretion in admitting D.S.'s testimony.

{¶48} Having rejected Kelly's arguments, we overrule his fourth assignment of error.

ASSIGNMENT OF ERROR V

{¶49} In his fifth and final assignment of error, Kelly argues his trial counsel was ineffective for first failing to subpoena June Stevens who was interviewed by the sheriff and implicated Duke as the culprit. According to Kelly, counsel's failure to subpoena Stevens prejudiced his case because her testimony was key to his defense that he was not the offender. Kelly argues next that his counsel was ineffective for failing to object to Z.R.'s testimony since it was hearsay and irrelevant. Kelly submits that Z.R.'s testimony was highly prejudicial.

{¶50} The state disagrees with both arguments. In response to Kelly's first claim, the state notes that the possibility of a different offender was put forth before the jury so no prejudice can be demonstrated. Similarly, the state maintains that no prejudice could be demonstrated for counsel's failure to object to Z.R.'s testimony because that testimony was not hearsay and properly admitted for identification.

I.  LAW

**{¶51}** To demonstrate ineffective assistance of counsel, Kelly "must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different."  *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1988), paragraph two of the syllabus.  Failure to demonstrate either prong of this test "is fatal to the claim."  *State v. Jones,* 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14, citing *Strickland*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

**{¶52}** Kelly "has the burden of proof because in Ohio, a properly licensed attorney is presumed competent."  *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62, citing *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999), citing *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 209 N.E.2d 164 (1965).  "In order to overcome this presumption, the petitioner must submit sufficient operative facts or evidentiary documents that demonstrate that the petitioner was prejudiced by the ineffective assistance."  *Id.*, citing *State v. Davis*, 133 Ohio App.3d 511, 513, 728 N.E.2d 1111 (8th Dist.1999).  To demonstrate prejudice, Kelly "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different. A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Strickland* at 694.

## II.  ANALYSIS

### A.  Failure to Subpoena Stevens

**{¶53}** First, Kelly fails to overcome that " 'counsel's decision whether to

call a witness falls within the rubric of trial strategy and will not be second-

guessed by a reviewing court.' " *State v. Pickens*, 141 Ohio St.3d 462, 2014-

Ohio-5445, 25 N.E.3d 1023, ¶ 203, *overruled in part on other grounds*, *State v.

Bates*, 159 Ohio St.3d 156, 2020-Ohio-634,149 N.E.3d 475, ¶ 35, quoting *State

v. Treesh*, 90 Ohio St.3d 460, 490, 739 N.E.2d 749 (2001).  Second, Kelly failed

to proffer what Stevens' testimony would have been above and beyond what was

already presented to the jury.

**{¶54}** During the state's case-in-chief, Detective DeWeese testified that

part of the follow-up in the case was interviewing a different person of interest.

The other person of interest was Clarence Tope, known as Duke.  Duke's identity

was established after June Stevens was interviewed by law enforcement.  But

Duke was ruled out as the person who solicited M.F.  Therefore, since there was

some evidence submitted to the jury of another offender being investigated and

cleared, Kelly cannot demonstrate he was prejudiced by his counsel's failure to

subpoena Stevens.

### B.  Failure to Object to Z.R.'s Testimony

**{¶55}** We begin by rejecting Kelly's claim that Z.R.'s testimony was

hearsay and should have been objected to by his counsel.  "Hearsay" is defined

as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). But Evid.R. 801(D)(2)(a) provides that a "statement is not hearsay if * * * [t]he statement is offered against a party and is (a) the party's own statement, in either an individual or a representative capacity." The Supreme Court of Ohio held that a "defendant's own out-of-court statements, offered against him at trial, are not hearsay." *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 112, citing Evid.R. 801(D)(2)(a). Z.R. testified that she heard Kelly ask D.S. if he wanted to get on the ride together and also if he wanted to jerk off with him. Z.R.'s statements are therefore clearly not hearsay since Kelly is a party-opponent. Accordingly, Kelly cannot demonstrate that had his counsel objected to Z.R.'s testimony based on hearsay such an objection would have been sustained.

{¶56} We also reject Kelly's claim that he was prejudiced by Z.R.'s testimony. We previously determined in the third assignment of error that Kelly's conviction was not against the manifest weight of the evidence without considering Z.R.'s testimony as it relates to Kelly's interaction with D.S. Moreover, Z.R.'s testimony was cumulative to D.S.'s assertions that Kelly asked him to get on the ride together. Therefore, Kelly cannot demonstrate that the isolated testimony that he also asked D.S. to jerk off was the basis for the jury's finding of guilt. The jury heard direct testimony from the victim and E.H. of Kelly asking M.F. if she had sex and how it felt and then inviting M.F. to the dark sheep

barn to show her.  These statements alarmed E.H. to the extent that she reacted by carrying ten-year-old M.F. and running to her grandmother.

**{¶57}** Having rejected Kelly's arguments, we overrule his fifth assignment of error.

CONCLUSION

**{¶58}** Kelly's five assignments of error are overruled and we affirm the trial court's judgment entry of conviction.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. and Abele, J.:  Concur in Judgment and Opinion.

For the Court,


BY: _____
Kristy S. Wilkin, Judge



### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**