[Cite as *State v. Murphy*, 2020-Ohio-4667.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 20CAA010005 |
| | : | |
| LEVI MURPHY | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Delaware County Court
of Common Pleas, case no.
19CRI040286

JUDGMENT:                              AFFIRMED

DATE OF JUDGMENT ENTRY:        September 30, 2020

APPEARANCES:

For Plaintiff-Appellee:                     For Defendant-Appellant:

MELISSA A. SCHIFFEL                   WILLIAM T. CRAMER
DELAWARE CO. PROSECUTOR         470 Olde Worthington Rd., Ste. 200
CHRISTOPHER E. BALLARD           Westerville, OH 43082
145 N. Union St., 3rd Floor
Delaware, OH 43015

*Delaney, J.*

{¶1}   Appellant Levi Murphy appeals from the January 14, 2020 Judgment Entry of Prison Sentence of the Delaware County Court of Common Pleas.  Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   This case arose on September 18, 2018, when J.W. viewed a Snapchat message from appellant asking J.W. if he wanted to engage in group sex with appellant and a female.  J.W. was age 15 when he received this message and appellant was 25.

{¶3}   Upon investigation of the Snapchat message, an earlier text message from appellant was discovered which included a photo of appellant's penis.  The text accompanying the photo stated "my junk be hurting like hell."

{¶4}   J.W. also received another Snapchat message from appellant containing a graphic description of his penis.

{¶5}   J.W. viewed the Snapchat message about the threesome when his friend C.J., also a minor, told him he received a strange message from appellant.  On September 18, 2018, appellant sent C.J. a Snapchat message describing appellant performing fellatio on three men in explicit detail.  Appellant stated people tried this to determine whether they were bisexual, and asked whether C.J. was "for or against" it.

{¶6}   The third victim, T.T., was age 16 on September 18, 2018.  He too received the message from appellant describing performing fellatio on three men.

{¶7}  The minors testified they didn't intend to report the messages from appellant, but a teacher overheard them discussing the messages so C.J. initiated a

report to the school resource officer. The investigation grew to include the messages received by J.W. and T.T. All three juveniles testified they did not solicit the messages from appellant.

{¶8} The school resource officer spoke with the minors and became concerned when he learned appellant was an adult and was convicted of a sexually-oriented offense in 2014. The school resource officer reported the messages to Officer Scott Ritter, appellant's community control supervisor, on September 19, 2018. After the 2014 case, appellant was ordered to have no internet access through any device including smartphones. He was also ordered to have no contact with minors.

{¶9} The day before the messages came to light, September 18, 2018, Ritter had received a pre-emptive phone call from appellant claiming that someone may have hacked his Snapchat accounts and sent messages purporting to be from him. Appellant told Ritter he did not send the messages and had not accessed Snapchat in several years.

{¶10} After Ritter was contacted by the school resource officer, he interviewed the minors and obtained copies of the messages. He arrested appellant for a parole violation.

{¶11} Upon appellant's arrest, he was in possession of a flip phone which was incapable of installing the Snapchat application. Ritter examined the flip phone and found a series of messages with someone with the same nickname as J.W. The text messages included a photo of a penis.

{¶12} Ritter went to appellant's residence, which was also his grandparents' house. Ritter obtained the grandmother's smartphone, which had the Snapchat application installed. Ritter asked appellant for his login information and appellant provided logins for two separate Snapchat accounts. Ritter logged into both accounts

and found the message received by J.W. in appellant's account. He also found the message received by C.J. and T.T., along with about 25 other recipients.

{¶13} Ritter pursued a probation violation against appellant for the messages because appellant was prohibited from contact with minors. Therefore, appellant was in violation of his probation conditions regardless of the content of the messages.

{¶14} Law enforcement performed a forensic search of appellant's flip phone, and also sought and obtained a search warrant for appellant's Snapchat accounts. Appellant's flip phone yielded the message and penis photo sent to J.W. Appellant's Snapchat accounts yielded the message sent to C.J. and T.T.

{¶15} Appellant was interviewed by law enforcement on October 9, 2018. He admitted knowing J.W., although he claimed he thought J.W. was 17 years old. He denied knowing C.J. and T.T. Appellant initially denied sending the penis picture, and claimed someone was sending messages from his Snapchat account. Eventually appellant admitted he sent the penis photo to J.W. Appellant admitted asking a male juvenile to have sex with him and an unidentified female, but he didn't remember who he asked. Appellant admitted accessing Snapchat through his grandmother's phone but denied messaging C.J. Appellant stated he worked long shifts and started using cocaine and methamphetamine to stay awake, despite rules of his probation. He stated that while he didn't recall sending the messages, it was possible that he did so while under the influence.

{¶16} Appellant was charged by indictment with one count of importuning pursuant to R.C. 2907.07(B), a felony of the fourth degree [Count I]; one count of importuning pursuant to R.C. 2907.07(D)(1), a felony of the fourth degree [Count II]; one

count of disseminating matter harmful to juveniles pursuant to R.C. 2907.31(A)(1),a felony of the fifth degree [Count III]; one count of disseminating material harmful to juveniles pursuant to R.C. 2907.31(A)(1), a felony of the fifth degree [Count IV]; and one count of disseminating matter harmful to juveniles pursuant to R.C. 2907.31(A)(1), a felony of the fifth degree [Count V].  Each count of the indictment contains a specification that appellant has previously been convicted of a sexually-oriented offense pursuant to R.C. 2907.07(F)(2).

{¶17} Counts I and II relate to the message sent to J.W. on or around September 18, 2018, and are charged in the alternative.  Count III relates to the penis photo and text sent to J.W. on or around September 9, 2018.  Counts IV and V relate to the message sent to C.J. and T.T. on September 18, 2018.

{¶18} Appellant entered pleas of not guilty and waived his right to trial by jury.

{¶19} On November 12 and 13, 2019, the matter proceeded to bench trial. Appellant moved for a judgment of acquittal at the close of appellee's evidence; the motion was overruled.  Appellant was found guilty as charged and sentencing was deferred.

{¶20} A sentencing hearing was held on January 3, 2020.  The trial court found that Counts I and II merge, and appellee elected to sentence upon Count I.  The trial court found the remaining counts do not merge and sentenced appellant as follows: a prison term of 15 months upon Count I, no sentence upon Count II, and prison terms of 9 months each upon Counts III, IV, and V. The trial court ordered the prison terms in Counts III through V are to be served concurrently with each other but consecutively to the prison term imposed in Count I.

{¶21} Appellant now appeals from the trial court's Judgment Entry of Prison Sentence dated January 14, 2020.

{¶22} Appellant raises two assignments of error:

**ASSIGNMENTS OF ERROR**

{¶23} "I.  APPELLANT'S RIGHT TO DUE PROCESS UNDER THE STATE AND FEDERAL CONSTITUTIONS WAS VIOLATED BY A CONVICTIONS [*SIC*] THAT WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE."

{¶24} "II.  APPELLANT'S CONVICTIONS WERE NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE."

**ANALYSIS**

I., II.

{¶25} Appellant's two assignments of error are related and will be considered together.  Appellant argues his convictions for importuning and disseminating material harmful to juveniles are against the manifest weight and sufficiency of the evidence.  We disagree.

{¶26} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the

defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶27} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶28} We begin by noting appellant does not dispute sending the messages and photo to three juveniles.  Instead, he disputes the meaning of the messages within the context of the charged offenses.  We will thus examine each offense in turn.

*Importuning: Snapchat message to J.W.*

{¶29} Appellant was found guilty upon two counts of importuning pursuant to R.C. 2907.07(B)(1) and (D)(1).  Those sections state in pertinent part:

> (B)(1) No person shall solicit another, not the spouse of the offender, to engage in sexual conduct with the offender, when the offender is eighteen years of age or older and four or more years older than the other person, and the other person is thirteen years of

age or older but less than sixteen years of age, whether or not the offender knows the age of the other person.

* * * *.

(D) No person shall solicit another by means of a telecommunications device, as defined in section 2913.01 of the Revised Code, to engage in sexual activity with the offender when the offender is eighteen years of age or older and either of the following applies:

(1) The other person is thirteen years of age or older but less than sixteen years of age, the offender knows that the other person is thirteen years of age or older but less than sixteen years of age or is reckless in that regard, and the offender is four or more years older than the other person.

{¶30} "Sexual conduct" as used in R.C. 2907.06(B)(1) means "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."  R.C. 2907.01(A).  "Sexual activity" as used in R.C. 2907.07(D)(1) means sexual conduct or sexual contact, or both.  R.C. 2907.01(C).  "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.  R.C. 2907.01(B).

{¶31} In the instant case, both counts of importuning relate to the message sent to J.W. on September 18, 2018 regarding group sex.[1] Appellant argues his convictions for importuning are against the manifest weight and sufficiency of the evidence because this message is not a solicitation for sexual conduct or sexual activity due to the "contingency" of appellant getting his own apartment.

{¶32} We find no such implied contingency in the text of the message or in its overall theme of a lewd, graphic request to engage in sexual activity with the recipient.

{¶33} We further conclude the finder of fact could reasonably find appellant solicited the victim through this communication. "Solicit" is defined as "to entice, urge, lure or ask." *State v. Swann*, 142 Ohio App.3d 88, 89, 753 N.E.2d 984 (1st Dist.2001) citing 4 Ohio Jury Instructions 199, Section 507.24 (1997). Without needing to parse the

---

[1] This message stated, *sic* throughout:

in about a month I will have my own place n can do things with u to break in the new furniture with you me and another girl I got but maybe hoping around from the floor to breaking the couch n n then my bed which is where I hope it ends bc then I can clean up the mess easly n if she changes her mind we use my car n if that was to happen I do ask u clean up your own mess. N if u don't I make u clean my entire car if u shoot on floor but recently I have had to clean up after n it isn't a lil it's a puddle of cum that litterly covered my back seat n litterly shot out that stunning load for at least 12 seconds n then me clean it up which isn't right * * *. I know this is out of know where but we should do it to become closer with each other.

text of the message closely, it is immediately evident appellant sought to entice the recipient into sexual activity. We find appellant's argument unavailing and his convictions for importuning are supported by sufficient evidence and are not against the manifest weight of the evidence.

*Disseminating matter harmful to juveniles: photo and text to J.W.*

{¶34} We turn now to appellant's convictions upon three counts of disseminating matter harmful to juveniles pursuant to R.C. 2907.31(A)(1), which states:

> No person, with knowledge of its character or content, shall recklessly do any of the following:

> Directly sell, deliver, furnish, disseminate, provide, exhibit, rent, or present to a juvenile, a group of juveniles, a law enforcement officer posing as a juvenile, or a group of law enforcement officers posing as juveniles any material or performance that is obscene or harmful to juveniles;

{¶35} The offense is a felony of the fifth degree if the material or performance is obscene. R.C. 2907.31(F). In the instant case, appellee charged appellant with offenses as felonies of the fifth degree and was therefore required to establish the material is obscene.

{¶36} When considered as a whole, and judged with reference to ordinary adults or, if it is designed for sexual deviates or other specially susceptible group, judged with reference to that group, any material or performance is "obscene" if any of the following apply:

> (1) Its dominant appeal is to prurient interest;

(2) Its dominant tendency is to arouse lust by displaying or depicting sexual activity, masturbation, sexual excitement, or nudity in a way that tends to represent human beings as mere objects of sexual appetite;

(3) Its dominant tendency is to arouse lust by displaying or depicting bestiality or extreme or bizarre violence, cruelty, or brutality;

(4) Its dominant tendency is to appeal to scatological interest by displaying or depicting human bodily functions of elimination in a way that inspires disgust or revulsion in persons with ordinary sensibilities, without serving any genuine scientific, educational, sociological, moral, or artistic purpose;

(5) It contains a series of displays or descriptions of sexual activity, masturbation, sexual excitement, nudity, bestiality, extreme or bizarre violence, cruelty, or brutality, or human bodily functions of elimination, the cumulative effect of which is a dominant tendency to appeal to prurient or scatological interest, when the appeal to such an interest is primarily for its own sake or for commercial exploitation, rather than primarily for a genuine scientific, educational, sociological, moral, or artistic purpose.

R.C. 2907.01(F).

{¶37} Count III relates to the photo of appellant's penis sent to J.W. and the accompanying text, "my junk be hurting like hell." Appellant argues this material is not

obscene because it does not fall within contemporary community standards of what is offensive; "dick pics," he argues, are so ubiquitous that juveniles laugh at them. Having viewed the photo and text, we disagree. We find the trial court could reasonably conclude the dominant tendency of the photo with the accompanying text, as sent to a juvenile, was to arouse lust by displaying or depicting sexual excitement or nudity in a way that tends to represent human beings as mere objects of sexual appetite. R.C. 2907.01(F)(2).

{¶38} Additionally, in *Miller v. California*, 413 U.S. 15, 24-25, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), the U.S. Supreme Court established a tripartite test for regulation of obscenity and stated the basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest * * *; (b) whether the work depicts or describes in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. R.C. 2907.01(F) is to be read in pari materia with the *Miller* decision, and the *Miller* test for defining obscenity is incorporated into that statute. *State v. Burgun*, 56 Ohio St.2d 354, 361, 384 N.E.2d 255 (1978).

{¶39} "Sexual conduct" in the context of the *Miller* test includes: "(a) patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated; (b) patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." *City of Urbana ex rel. Newlin v. Downing*, 43 Ohio St.3d 109, 115–16, 539 N.E.2d 140 (1989) citing *Miller, supra,* at 25. In the context of the *Miller* test, we likewise find the photo and text in question to appeal to the prurient interest. "Prurient interest" is defined in Ohio as "not the same as a candid,

normal or healthy interest in sex, rather it is a shameful or morbid interest in nudity, sex, or excretion * * * [which] goes substantially beyond limits of candor in description or representation of such matters * * *." *Matter of M.W.*, 5th Dist. Licking No. 2018 CA 0021, 2018-Ohio-5227, ¶ 43, *appeal not allowed sub nom. In re M.W.*, 156 Ohio St.3d 1465, 2019-Ohio-2892, 126 N.E.3d 1165, citing *State v. Girard*, 9th Dist. Medina No. 02CA0057-M, 2003-Ohio-7178, f.n. 13, (Whitmore, J., dissenting), internal citations deleted.  This photo is a lewd exhibition of the genitals with a text seemingly intended to elicit a response of sexual arousal; the material patently lacks any serious literary, artistic, political, or scientific value.  As appellee points out, the recipient testified he found the photo "gross" and asked appellant not to send him pictures of this nature.

{¶40} Ultimately having viewed this photo, we find appellant's argument unavailing.  The photo and accompanying text support appellant's conviction upon Count III.

*Disseminating matter harmful to juveniles: message describing fellatio*

{¶41} Counts IV and V pertain to the Snapchat message sent to both C.J. and T.T. in appellee's Exhibit 5.[2]  This message meets the definitions contained in R.C.

---

[2] That message stated as follows, *sic* throughout:

So idk if you no [two names] and u might no [another name] but wanted u to no that yesterday I litterly blew them 3 guys n what's sad is they tell people there strait but after all 3 tryied it found out the 3 guys who get non stop pussy litterly asked me to help them n found out real quick they r curious bc they all got hard in less than 10 secs when I started stroking

2907.01(F)(1) and (5), supra.  This message adds highly offensive racial slurs and bigotry to graphic, lewd descriptions of sexual organs and activity.  Appellant's argument that this message is typical of the culture and insignificant to juveniles is not well-taken.  We have reviewed the evidence in question and find that the Snapchat message supports appellant's convictions for disseminating material harmful to juveniles in Counts IV and V.

---

them n found out [name] has a nigger dick n is blessed bc of how big 1. Which shocked me bc he has a dick that's 4 inches when soft n got a girth the size of a Italian sausage but when hard litterly pushes at least 10 inches which is most I ever sucked, I swear on my life that [name] n [name] n [name] as well r all bi n [name] is big af to just like [name]is but maybe lil longer by a inch.  I sucked him 4 a good 50 minutes before he gave up n didn't finish.  I litterly almost died when I saw then n. found out [name] has a dick the size of a baby carrot but big girth n couldn't get off til I blew him for 2 hours n finally came n was tiny af.  thought u would like to no that people are trying it to find out if they r strait or curious by helping them out n letting a guy blow them n stroke n suck to c if u get hard at all n finding that your curious a lil.  Stayin soft would of proved there strait but I think it's cool people are doint it to find out if there curious n tbh I think everyone should do it at least n find out what they really like.  What u think about this? U 4 or against?

{¶42} Upon our review of the record and exhibits, we find appellant's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence.  Appellant's two assignments of error are thus overruled.

**CONCLUSION**

{¶43} Appellant's two assignments of error are overruled and the judgment of the Delaware County Court of Common Pleas is affirmed.

By:  Delaney, J.,

Gwin, P.J. and

Wise, Earle, J., concur.