[Cite as *State v. Brinkman*, 2024-Ohio-1005.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## DEFIANCE COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

BENJAMIN J. BRINKMAN,

    DEFENDANT-APPELLANT.

CASE NO. 4-23-08

O P I N I O N

---

**Appeal from Defiance County Common Pleas Court**
**Trial Court No. 22 CR 14917**

**Judgment Affirmed**

**Date of Decision:  March 18, 2024**

---

**APPEARANCES:**

    *Joseph Sobecki* **for Appellant**

    *Russell R. Herman* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Benjamin J. Brinkman ("Brinkman"), appeals the July 14, 2023 judgment entry of sentence of the Defiance County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case stems from Snap Chat messages and photographs exchanged during the summer of 2022 between Brinkman, a then 35-year-old man, and the victim, who was 13 years old at the time of the offenses at issue in this case. After the victim's mother became concerned that her daughter was possibly communicating with Brinkman, she confiscated her cell phone and discovered sexually explicit messages and photographs exchanged by Brinkman and her daughter on Snap Chat.

{¶3} On October 28, 2022, the Defiance County Grand Jury indicted Brinkman on Count One of pandering sexually oriented matter involving a minor in violation of R.C. 2907.322(A)(5), a fourth-degree felony, and Count Two of importuning in violation of R.C. 2907.07(D)(1), a fifth-degree felony. On November 18, 2022, Brinkman appeared and entered pleas of not guilty to the indictment.

{¶4} The case proceeded to a bench trial on June 29, 2023. The trial court found Brinkman guilty of the counts alleged in the indictment and sentenced him to 16 months in prison on Count One and to 10 months in prison on Count Two.[1] The

---

[1] The trial court filed its judgment entry of sentence on July 14, 2023.

trial court further ordered that Brinkman serve the prison terms consecutively for an aggregate sentence of 26 months in prison. Moreover, the trial court classified Brinkman as a Tier II sex offender.

{¶5} Brinkman filed his notice of appeal on July 21, 2023. He raises two assignments of error for our review.

**First Assignment of Error**

**The Court Erred in Convicting Defendant of Importuning in Violation of R.C. 2907.07(D)(1). *See* Sentencing Order at 2; Tr. 159:9-14.**

{¶6} In his first assignment of error, Brinkman argues that his importuning conviction is based on insufficient evidence.[2] In particular, Brinkman argues that his importuning conviction is based on insufficient evidence because "the State failed to prove beyond reasonable doubt, the element of solicitation by means of a telecommunications device" since "there is no non-hearsay testimony that Brinkman sent any text or Snapchat message to the alleged victim that could be construed as soliciting sexual activity." (Appellant's Brief at 11, 13).

*Standard of Review*

{¶7} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average

---

[2] Brinkman does not challenge his pandering-sexually-oriented-matter-involving-a-minor conviction.

mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ¶ 25 (1st Dist.). *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

*Sufficiency of the Evidence*

{¶8} As an initial matter, the record reveals that Brinkman failed to renew his Crim.R. 29(A) motion at the conclusion of his case-in-chief or at the conclusion of all the evidence.

> In order to preserve the issue of sufficiency on appeal, this court has held that "[w]hen a defendant moves for acquittal at the close of the state's evidence and that motion is denied, the defendant waives any error which might have occurred in overruling the motion by proceeding to introduce evidence in his or her defense. In order to preserve a sufficiency of the evidence challenge on appeal once a

defendant elects to present evidence on his behalf, the defendant must renew his Crim.R. 29 motion at the close of all the evidence."

*State v. Hurley*, 3d Dist. Hardin No. 6-13-02, 2014-Ohio-2716, ¶ 37, quoting *State v. Edwards*, 3d Dist. Marion No. 9-03-63, 2004-Ohio-4015, ¶ 6. Based on this court's precedent, Brinkman's failure to renew his Crim.R. 29(A) motion at the conclusion of his case-in-chief or at the conclusion of all evidence waived all but plain error on appeal. *Id.* at ¶ 37, citing *State v. Flory,* 3d Dist. Van Wert No. 15-04-18, 2005-Ohio-2251, citing *Edwards*.

**{¶9}** "However, '"[w]hether a sufficiency of the evidence argument is reviewed under a prejudicial error standard or under a plain error standard is academic."'" *Id.* at ¶ 38, quoting *Perrysburg v. Miller*, 153 Ohio App.3d 665, 2003-Ohio-4221, ¶ 57 (6th Dist.), quoting *State v. Brown,* 2d Dist. Montgomery No. 17891, 2000 WL 966161, *8 (July 14, 2000). "Regardless of the standard used, 'a conviction based on legally insufficient evidence constitutes a denial of due process, and constitutes a manifest injustice.'" *Id.*, quoting *Thompkins*, at 386-387. Accordingly, we will proceed to determine whether the State presented sufficient evidence to support Brinkman's importuning conviction. *See id.*

**{¶10}** Brinkman was convicted of importuning in violation of R.C. 2907.07(D)(1). That statute provides, in its relevant part, that

> [n]o person shall solicit another by means of a telecommunications device, as defined in section 2913.01 of the Revised Code, to engage in sexual activity with the offender when the offender is eighteen years of age or older and * * * [t]he other person is less than thirteen

years of age, and the offender knows that the other person is less than thirteen years of age or is reckless in that regard.

R.C. 2907.07(D)(1). Under R.C. 2913.01, a

"[t]elecommunications device" means any instrument, equipment, machine, or other device that facilitates telecommunication, including, but not limited to, a computer, computer network, computer chip, computer circuit, scanner, telephone, cellular telephone, pager, personal communications device, transponder, receiver, radio, modem, or device that enables the use of a modem.

R.C. 2913.01(Y).

{¶11} "'Sexual activity' means sexual conduct or sexual contact, or both." R.C. 2907.01(C). The statute defines sexual conduct as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another." R.C. 2907.01(A). Likewise, the statute defines sexual contact as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶12} Even though "[t]he term 'solicit' is not statutorily defined," Ohio courts of appeal have defined the term to mean "'to seek, to ask, to influence, to invite, to tempt, to lead on, to bring pressure to bear.'" *State v. Kelly*, 4th Dist. Hocking No. 20CA5, 2021-Ohio-2007, ¶ 29; *State v. Barnett*, 3d Dist. Hardin No.

6-12-03, 2012-Ohio-3748, ¶ 23, quoting *State v. Jain*, 3d Dist. Auglaize No. 2-09-25, 2010-Ohio-1712, ¶ 12. *See also State v. Murphy*, 5th Dist. Delaware No. 20CAA010005, 2020-Ohio-4667, ¶ 33 ("'Solicit' is defined as 'to entice, urge, lure or ask.'"), quoting *State v. Swann*, 142 Ohio App.3d 88, 89 (1st Dist.2001). "'Thus, even in the absence of evidence that the defendant "asked" the minor to engage in sexual activity, a defendant may still be found guilty of importuning under R.C. 2907.07 if there is evidence that the defendant sought, influenced, invited, tempted, led, or pressured the victim to engage in sexual activity.'" *State v. Petty*, 10th Dist. Franklin No. 15AP-950, 2017-Ohio-1062, ¶ 77, quoting *State v. Kent*, 8th Dist. Cuyahoga No. 98863, 2013-Ohio-2461, ¶ 14.

{¶13} Likewise, our sister courts of appeal resolved that "'in order to be sufficient to prove criminal liability for an alleged R.C. 2907.07(A) violation, the evidence must demonstrate that the conduct which the alleged solicitation for sex involved was performed recklessly, as that is defined by R.C. 2901.22(C).'" *Kelly* at ¶ 17, quoting *In re J.W.*, 2d Dist. Miami No. 04CA5, 2004-Ohio-3404, ¶ 19.

> A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

R.C. 2901.22(C).

{¶14} In support of his sufficiency-of-the-evidence challenge, Brinkman argues that a rational trier of fact could not have found that he solicited the victim by means of a telecommunications device to engage in sexual activity. That is, Brinkman contends that "there is simply no evidence, beyond the alleged victim's 'feelings' that Brinkman was wanting to engage in sexual activity with her, that Brinkman ever did so" because "those personal feelings do no constitute evidence sufficient for any reasonable person to find beyond a reasonable doubt that the discussion was a solicitation." (Appellant's Brief at 12). Brinkman alleges that the evidence presented by the State at trial that he solicited the victim by means of a telecommunications device to engage in sexual activity was hearsay. Because they are the only elements that Brinkman challenges on appeal, we will review the sufficiency of the evidence supporting only whether he solicited the victim by means of a telecommunications device to engage in sexual activity.

{¶15} As an initial matter, Brinkman's argument that the evidence presented by the State at trial that he solicited the victim by means of a telecommunications device to engage in sexual activity was hearsay is without merit. *See State v. Ward*, 9th Dist. Lorain No. 09CA009720, 2011-Ohio-518, ¶ 20. "The Supreme Court of Ohio has held that when reviewing the sufficiency of the evidence, an appellate court is to consider all of the evidence admitted at trial, even if the evidence was improperly admitted." *Id.*, citing *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, ¶ 19.

{¶16} Consequently, viewing the evidence in a light most favorable to the prosecution, we conclude that Brinkman's importuning conviction is based on sufficient evidence. That is, the State presented sufficient evidence that Brinkman solicited the victim by means of a telecommunications device to engage in sexual activity.

{¶17} Indeed, based on our review of the record, we conclude that the State presented sufficient evidence at trial from which the trier of fact could conclude that Brinkman disregarded a substantial and unjustifiable risk that his conduct (through Snap Chat) was likely seeking, influencing, inviting, tempting, leading, or pressuring the victim to engage in sexual activity. *See Barnett*, 2012-Ohio-3748, at ¶ 23 ("Viewing the text message conversation in a light most favorable to the State, there was sufficient evidence that Barnett influenced, tempted, and pressured the alleged minor child to engage in sexual activity"); *Murphy*, 2020-Ohio-4667, at ¶ 33 ("Without needing to parse the text of the message closely, it is immediately evident appellant sought to entice the recipient into sexual activity."); *State v. Gomez*, 6th Dist. Lucas No. L-17-1130, 2019-Ohio-576, ¶ 73 (noting that, "[i]n many of the[] messages, appellant employed graphic sexual language in an effort to solicit M.D. to engage in sexual activity with him"). Importantly, even though the State did not produce exhibits depicting the Snap Chat messages and photographs, that does not mean that the State did not produce sufficient evidence of the contents of those messages or images. *See State v. Sebring*, 9th Dist. Wayne No. 22AP0032,

2023-Ohio-2911, ¶ 21 ("The fact that the State did not also produce a picture of the Snap Chat message Mr. Sebring sent to Q.H. does not mean the State failed to produce sufficient evidence to prove the content of that message.").

{¶18} Rather, the State presented the testimony of the victim, who confirmed that she had "some communication type of relationship with" Brinkman (primarily) through Snap Chat. (June 29, 2023 Tr. at 86). The victim testified that they talked on Snap Chat "about actually doing some kind of sexual things together," including "sexual acts" and "intercourse." (*Id.* at 88). Critically, the victim testified that they "were talking about sex acts that [they] wanted to do together." (*Id.* at 96). Moreover, the victim testified that she sent nude pictures of herself to Brinkman as well as "a picture that was a little bit more graphic sexually where [she] was touching" herself. (*Id.* at 92). On re-direct examination, the victim testified that Brinkman "wanted the[] pictures" and that she sent the explicit pictures to him because she is "a big people pleaser" and that she will "do whatever it takes" "[i]f it makes people happy * * * ." (*Id.* at 127). She confirmed that "he would want [her] to send those pictures if [she was] willing to * * * ." (*Id.* at 128).

{¶19} The State also presented the testimony of the victim's mother, who testified that she had her husband "confiscate [the daughter's] cell phone" after she became concerned that her daughter was communicating with Brinkman. (June 29, 2023 Tr. at 40). According to the victim's mother, she discovered "some very bad conversations" between her daughter and Brinkman on Snap Chat in which her

"daughter was asking him if he was masturbating to some pictures" along with "conversations that they were having * * * in regards to * * * explicit pictures and masturbation." (*Id.* at 41). The victim's mother testified that she later discovered "a picture of [her] daughter's breast that she had sent and then a little bit further down was a picture of what [she assumed] is Mr. Brinkman's pelvic area showing his penis to her." (*Id.* at 43).

{¶20} Likewise, the State presented the testimony of Officer Whitney Schalk ("Officer Schalk") of the Defiance Police Department, who testified that she investigated the conduct at issue in this case. Specifically, Officer Schalk testified that the victim reported that her communication with Brinkman had been "going on for approximately three to four months" through Snap Chat. (*Id.* at 16). Officer Schalk explained that "[i]f [photos or messages are] not saved, they won't be able to be viewed" on Snap Chat. (*Id.* at 17).

{¶21} Based on that evidence, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Brinkman solicited the victim by means of a telecommunications device to engage in sexual activity. Consequently, Brinkman's importuning conviction is based on sufficient evidence.

### Second Assignment of Error

**The Trial Court Erred When it Sentenced Defendant Brinkman to Consecutive Prison Sentences. *See* Sentencing Order at 2-23; Tr. at 166:10-167:5.**

**{¶22}** In his second assignment of error, Brinkman challenges the trial court's order that he serve his sentences consecutively. Specifically, Brinkman argues that the trial court erred by imposing consecutive sentences in this case without making the required findings under R.C. 2929.14(C)(4) and without considering whether consecutive sentences are necessary and proportional.

*Standard of Review*

**{¶23}** Under R.C. 2953.08(G)(2), an appellate court will reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. When reviewing the imposition of consecutive sentences, "[t]he plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record." *State v. Gwynne*, ___ Ohio St.3d ___, 2023-Ohio-3851, ¶ 5. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Marcum* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

*Analysis*

**{¶24}** "Except as provided in * * * division (C) of section 2929.14, * * * a prison term, jail term, or sentence of imprisonment shall be served concurrently with

any other prison term, jail term, or sentence of imprisonment imposed by a court of this state, another state, or the United States." R.C. 2929.41(A). R.C. 2929.14(C) provides:

> (4) * * * [T]he court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶25} R.C. 2929.14(C)(4) requires a trial court to make specific findings on the record before imposing consecutive sentences. *State v. Hites*, 3d Dist. Hardin No. 6-11-07, 2012-Ohio-1892, ¶ 11; *State v. Peddicord*, 3d Dist. Henry No. 7-12-24, 2013-Ohio-3398, ¶ 33. Specifically, the trial court must find: (1) consecutive sentences are necessary to either protect the public or punish the offender; (2) the sentences would not be disproportionate to the offense committed; and (3) one of the factors in R.C. 2929.14(C)(4)(a), (b), or (c) applies. *Id.*; *Id.*

-13-

{¶26} The trial court must state the required findings at the sentencing hearing prior to imposing consecutive sentences and incorporate those findings into its sentencing entry. *State v. Sharp*, 3d Dist. Putnam No. 12-13-01, 2014-Ohio-4140, ¶ 50, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 29. A trial court "has no obligation to state reasons to support its findings" and is not "required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Bonnell* at ¶ 37.

{¶27} In this case, Brinkman argues that the trial court failed to state whether one of the factors in R.C. 2929.14(C)(4)(a), (b), or (c) applies. Brinkman's argument is without merit. Rather, based on our review of the record, we are able to discern that the trial court made the statutorily required findings before imposing consecutive sentences at the sentencing hearing and incorporated those findings into its sentencing entry. *Compare State v. J.L.H.*, 10th Dist. Franklin No. 19AP-369, 2019-Ohio-4999, ¶ 17 (concluding that the trial court's "findings [were] sufficient to fulfill the elements of R.C. 2929.14(C)(4)(b)").

{¶28} Indeed, at the sentencing hearing, the trial court discussed the harm caused by the offenses that Brinkman committed in this case. *Compare State v. Smith*, 2d Dist. Montgomery No. 28265, 2019-Ohio-5015, ¶ 76 (concluding that, "given that C.B. was only 14 years old at the time of 41-year-old Smith's offenses, and had been coached by him and been a teammate, classmate, and friend of his

daughter since the age of eight, we cannot clearly and convincingly conclude that the record does not support a finding that the harm C.B. suffered was greater or more unusual than that suffered by other 'minors' (including those above the age of consent) who may have engaged in sexual conduct with a coach"); *J.L.H.* at ¶ 17 (determining that the trial court found that consecutive sentences were necessary under R.C. 2929.14(C)(4)(b) because it "referred to appellant's conduct in terms of 'offenses' after having found that he was in a position of trust as her step-grandfather and a minister in the community"). Specifically, the trial court highlighted that Brinkman "held a position of trust somehow with the alleged victim and this trust was violated." (June 29, 2023 Tr. at 166). That is, the trial court analyzed that it was "trouble[ed]" that Brinkman—as "a strange nonrelated adult," was "permitted to intermingle with the children of the school"— and that he "met [the victim in this case] in school." (*Id.* at 165). Critically, the trial court, after detailing the victim's young age and the harm that she suffered in this case, determined that Brinkman "groomed [the victim] [and] obviously is a predator of young girls". (*Id.*).

{¶29} Moreover, the trial court incorporated its finding into its sentencing entry by stating "that consecutive terms are necessary to adequately protect the public and are not disproportionate given the nature of these offenses, the seriousness of the offender's conduct, and the danger the offender poses to the public including the risk that [Brinkman] will re-offend." (Doc. No. 22).

**{¶30}** Consequently, even though "the trial court could have been clearer in the language used at the" sentencing hearing and in its sentencing entry, the trial court's findings align with R.C. 2929.14(C)(4)(b). *State v. Rodriquez*, 3d Dist. Defiance No. 4-16-16, 2017-Ohio-1318, ¶ 12. *See also J.L.H.* at ¶ 17 ("Although the trial court's findings at the sentencing hearing do not recite the statutory language verbatim, the trial court findings are consistent with R.C. 2929.14(C)(4)(b)."). Importantly, "the 'so great or unusual' factor applies not as to the conduct of the defendant, but as to the harm caused by such conduct." *Smith* at ¶ 76. Thus, based on our review of the record, we conclude that the trial court engaged in the correct analysis and made the required R.C. 2929.14(C)(4) factors before imposing consecutive sentences. *Accord J.L.H.* at ¶ 17. Accordingly, the trial court did not err by imposing consecutive sentences in this case.

**{¶31}** Brinkman's second assignment of error is overruled.

**{¶32}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and WALDICK, J., concur.**

**/hls**